IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| **HAROLD ARTHUR LONG** § | Case No. 17-60401 | |
| xxx-xx-7333 § | | |
| and **GEORGIA PEARL LONG** § | | |
| xxx-xx-8992 § | | |
| P. O. Box 82, Golden, TX 75444 § | | |
| § | | |
| Debtors § | Chapter 7 | |
| BRANDI BRUCE § | | |
| and TODD SHORT § | | |
| § | | |
| Plaintiffs § | | |
| § | | |
| v. § | Adversary No. 17-6007 | |
| § | | |
| HAROLD ARTHUR LONG, § | | |
| and GEORGIA PEARL LONG § | | |
| § | | |
| Defendants § | | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

This matter came before the Court for trial of the complaint filed by the Plaintiffs, Brandi Bruce and Todd Short (the "Plaintiffs"), through which they seek a determination that a debt owed to each of them by one of the Defendant-Debtors, Georgia P. Long ("Mrs. Long" or the "Defendant"), should be declared nondischargeable under § 523(a)(6) of the Bankruptcy Code. The trial pertained solely to the actions of Mrs.

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

Long since a related debt owed by her husband, Harold A. Long, arising from the same set of operative facts and the resulting state court litigation, has already been declared nondischargeable by the Court pursuant to that certain "Order Granting in Part and Denying in Part Plaintiffs' Motion for Summary Judgment" entered in this cause on March 28, 2018, for the reasons set forth in a memorandum of decision entered contemporaneously therewith.  However, the Plaintiffs failed to demonstrate the propriety of an entry of summary judgment against Mrs. Long due to divergent jury findings as to the conduct of the two spouses.[2]  At the conclusion of the trial, the Court took the matter under advisement.  This decision disposes of all issues pending before the Court.

## FINDINGS OF FACT

1. The Plaintiffs are contiguous property owners with the Defendant[3] and her husband in Wood County, Texas, and are successors-in-interest to a non-exclusive right of ingress and egress impressed upon the southern boundary of the Defendants' property.

2. As a result of a series of incidents by and among the Plaintiffs and the Defendants which the Plaintiffs contended in state court were designed to intimidate them into selling their residential property, the Plaintiffs sought legal redress against the Defendants in state court.

---

[2] The Plaintiffs must make the proper showing as against each individual debtor.  "The mere existence of the marital relationship does not determine a spouse's entitlement to discharge." *First United Bank & Trust Co. v. Buescher (In re Buescher)*, 491 B.R. 419, 426 n.1 (Bankr. E.D. Tex. 2013) (citing *First Texas Sav. Ass'n, Inc. v. Reed (In re Reed)*, 700 F.2d 986, 993 (5th Cir. 1993) and *Cadlerock Joint Venture, L.P. v. Sauntry (In re Sauntry)*, 390 B.R. 848, 855 (Bankr. E.D. Tex. 2008).

[3] Hereafter, any reference to the "Defendant" or the "Debtor" is a reference to Mrs. Long.

*State Court Litigation*

3. The Plaintiffs sued both Mrs. Long and her husband in tort and for injunctive relief in January 2014 in an action filed in the 402nd Judicial District Court in and for Wood County, Texas under cause no. 2014-015 and styled *Brandy Bruce and Todd Short v. Harold A. Long and Georgia Long* (the "State Court Litigation").

4. That state court litigation was tried to a jury in October 2016 and certain factual determinations arising from that litigation are binding upon the parties in this Court under the principles of issue preclusion.

5. Mrs. Long committed no assault against either Plaintiff.[4]

6. Mrs. Long committed a trespass upon the Plaintiffs' property.[5]

7. Mrs. Long did not commit a trespass against either Plaintiff with malice and no liability for exemplary damages was imposed upon Mrs. Long.[6]

8. The state district court entered a Final Judgment in favor of the Plaintiffs and against the Defendants based upon the jury findings on December 19, 2016 (the "State Court Judgment").[7]

9. As a result of the State Court Judgment, Mrs. Long owes an indebtedness to Plaintiff, Brandi Bruce, in the sum of $350,000 for trespass damages.[8]

---

[4] Plaintiffs' Ex. 1 [*Jury Charge*] at 16-17. Conversely, the jury found that Harold A. Long committed an assault upon Todd Short, but no damages were assessed by the jury based upon that assault.

[5] *Id.* at 27.

[6] As the jury was instructed, Texas law defines malice in this context as "a specific intent by a defendant to cause substantial injury or harm" and such malice must be proven by clear and convincing evidence. *Id.* at 31-32. *Bennett v. Reynolds*, 315 S.W.3d 867, 872 (Tex. 2010).

[7] *Final Judgment* [dkt #1-2] at 37.

[8] *Id.* at 28. See also Plaintiffs' Ex. 2 [*Final Judgment*] at 40. The Final Judgment also awards prejudgment interest of $86,250 (although it fails to delineate how such an award is to be allocated), an attorney's fees award of $25,530, and post-judgment interest at an annual rate of 5%.

10. As a result of the State Court Judgment, Mrs. Long owes an indebtedness to Plaintiff, Todd Short, in the sum of $250,000 for trespass damages.[9]

11. Mrs. Long did not appeal the State Court Judgment and this Court cannot reexamine the factual or legal propriety of the damage awards granted by the State Court Judgment.[10]

12. On May 26, 2017, the Defendants, Harold A. and Georgia P. Long, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court under case no. 17-60401.

13. On June 5, 2017, the Plaintiffs filed a complaint seeking a determination of dischargeability regarding the judgment debt and the Defendants subsequently answered the complaint.

14. The Plaintiffs' complaint contends that indebtedness owed to them by the Debtor-Defendants arising from the entry of the State Court Judgment should be declared nondischargeable as a willful and malicious injury under § 523(a)(6) of the Bankruptcy Code.

15. On March 28, 2018, the Court entered its *Order Granting in Part and Denying in Part Plaintiffs' Motion for Summary Judgment* in which the Court granted summary judgment against Mr. Long and declared that the indebtedness owed by him to the Plaintiffs, as reflected in the State Court Judgment, was excepted from discharge as a debt arising from a willful and malicious injury pursuant to 11

---

[9] *Id.*

[10] This Court is precluded from hearing any complaint regarding the propriety of the Final Judgment by the *Rooker-Feldman* doctrine, which prevents lower federal courts from reviewing a state court decision when the issues raised in the federal court would be "inextricably intertwined" with a state court judgment and the federal court would, in essence, be called upon to review the state court decision. *Davis v. Bayless*, 70 F.3d 367, 375-76 (5th Cir. 1995) (citing *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994)). A claim entertained by a lower federal court is "inextricably intertwined" with those addressed in the state court "whenever the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *In re Popkin & Stern*, 259 B.R. 701, 706 (B.A.P. 8th Cir. 2001) (quoting *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997)); *see also Weaver v. Texas Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) [observing that "as we have noted in other cases, the *Rooker–Feldman* doctrine generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment"]. The doctrine recognizes that "judicial errors committed in state courts are for correction in the state court systems" through the appellate process. *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986).

U.S.C. § 523(a)(6).[11]

16. The Court denied the Plaintiffs' Motion for Summary Judgment as against Mrs. Long based upon the binding factual determinations arising from the jury findings.[12]

17. Though the state court jury determined that Mrs. Long did not act with malice against either Plaintiff in committing her trespass, such proof of malice is governed by a clear and convincing evidentiary standard under Texas law.

18. Thus, though the jury finding that Mrs. Long did not commit her trespass with malice (i.e., with a specific intention to cause substantial injury or harm) is binding upon the parties, it did not preclude the Plaintiffs from presenting evidence to this Court that Mrs. Long acted with an intention to cause injury to them under a preponderance of the evidence standard.

19. The Plaintiffs contended that the trespass damages awarded under the State Court Judgment were the result of a willful and malicious injury inflicted upon them by Mrs. Long.

20. It is the Plaintiffs' evidentiary burden to prove that Mrs. Long took specific actions with an intent to cause the injuries suffered by the Plaintiffs.

21. However, the evidence tendered by the Plaintiffs at trial consistently demonstrated that the specific acts of aggression against them in the stated episodes were committed by Mr. Long, not by Mrs. Long.

22. As a reminder, the Plaintiffs are precluded by the principles of issue preclusion from any factual determination that Mrs. Long committed an assault against either of them in any of the stated episodes because the jury found in the State Court Litigation that Mrs. Long did not commit an assault against either Plaintiff.

23. The Plaintiffs failed to demonstrate by a preponderance of the evidence that Mrs. Long, as opposed to Mr. Long, personally locked the gate blocking the Plaintiffs' driveway in order to deprive the Plaintiffs of access to their property in February 2013.

---

[11] Dkt. #34.

[12] See *Memorandum of Decision* pertaining to the Plaintiffs' Motion for Summary Judgment (dkt #35).

24. The Plaintiffs failed to demonstrate by a preponderance of the evidence that Mrs. Long, as opposed to Mr. Long, personally blocked the Plaintiffs' driveway with a vehicle in order to deprive the Plaintiffs of access to their property in February 2013.

25. The Plaintiffs failed to demonstrate by a preponderance of the evidence that any act of yelling or shouting by Mrs. Long constituted a proximate cause of the damages awarded to them under the State Court Judgment.

26. Yelling or shouting is not an activity that inherently creates an objective substantial certainty of harm.

27. The Plaintiffs are precluded by the principles of issue preclusion from establishing that Mrs. Long committed an assault against them during the incident involving the Plaintiffs' vehicle in May 2013[13] because the jury found in the State Court Litigation that Mrs. Long did not commit an assault against either Plaintiff.

28. The Plaintiffs are precluded by the principles of issue preclusion from establishing that Mrs. Long committed an assault against Todd Short in the buckshot incident in January 2014 because the jury found in the State Court Litigation that Mrs. Long did not commit an assault against either Plaintiff.

29. The Plaintiffs failed to demonstrate by a preponderance of the evidence that Mrs. Long, as opposed to Mr. Long, took any specific, affirmative action against Todd Short in the buckshot incident in January 2014.

30. The Plaintiffs are precluded by the principles of issue preclusion from establishing that any inaction or inactivity by Mrs. Long occurring on her own property during the buckshot incident in January 2014 was a proximate cause of damages assessed against her in the State Court Judgment because the jury assessed damages against Mrs. Long only based upon trespass, and specifically found that Mrs. Long did not commit an assault against either Plaintiff.

31. The Plaintiffs did not assert at trial that Mrs. Long had a legal duty to take action in order to protect them from the actions of her husband.

---

[13] The parties made no specific reference to the calendar year of this episode in the record presented to this Court, yet 2013 is suggested by its placement in the chronological presentation of the dispute by and among the parties.

32. The Plaintiffs failed to demonstrate that the State Court Judgment awarded damages to them based upon an act of omission by Mrs. Long.

33. The Plaintiffs failed to demonstrate by a preponderance of the evidence that Mrs. Long had a legal duty to take action in order to protect them from the actions of her husband.

34. The Plaintiffs failed to demonstrate by a preponderance of the evidence that, even if Mrs. Long had a duty to act, her failure to fulfill that duty was intentional, as opposed to merely negligent or reckless.

35. The Plaintiffs failed to demonstrate by a preponderance of the evidence that, even if Mrs. Long had a duty to act, her failure to fulfill that duty created an objective substantial certainty of harm.

36. The Plaintiffs failed to demonstrate by a preponderance of the evidence that Mrs. Long directed the events that resulted in injuries suffered by the Plaintiffs.

37. The Plaintiffs failed to demonstrate by a preponderance of the evidence that Mrs. Long induced or caused her husband to engage in acts that resulted in injuries suffered by the Plaintiffs.

38. The Plaintiffs failed to demonstrate by a preponderance of the evidence that Mrs. Long possessed the power to prevent or preclude her husband from engaging in acts constituting an assault against the Plaintiffs or which resulted in an improper interference with the Plaintiffs' property rights.

39. The Plaintiffs failed to demonstrate by a preponderance of the evidence that Mrs. Long personally engaged in any deliberate and intentional action which, from a reasonable person's standpoint, was objectively and substantially certain to cause harm to the Plaintiffs.

40. The Plaintiffs failed to demonstrate by a preponderance of the evidence that Mrs. Long possessed a subjective intent to inflict an injury upon either of them.

41. Any evidence regarding any affirmative action taken by Mrs. Long in these episodes establishes no more than she engaged in a deliberate action which led to an injury — a circumstance which the United States Supreme Court has specifically found to be insufficient to establish nondischargeability as a willful and malicious injury under § 523(a)(6).

42. While the factual determinations arising from the State Court Litigation establish an indebtedness to each Plaintiff that was proximately caused by the conduct of Mrs. Long, that fact cannot be permitted to stand in lieu of the required degree of proper proof pertaining to that particular Defendant's conduct and intentions under these circumstances, particularly in light of the Bankruptcy Code's directive that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor.

43. To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1334 and 11 U.S.C. § 523. This Court has personal jurisdiction over the parties to this adversary proceeding.

2. This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

3. The complaint filed by the Plaintiffs seeks a determination that the debt owed by the Defendant arising from the State Court Litigation should be excepted from discharge under 11 U.S.C. § 523(a)(6), just as her husband's debt has been excepted.

4. In seeking to except the debt owing to them from the scope of the discharge granted to the Defendant, the Plaintiffs assume the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

5. All exceptions to discharge under § 523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."[14] *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).

---

[14] However, a fresh start is not promised to all who file for bankruptcy relief, but only to "the honest but unfortunate debtor." *Grogan*, 498 U.S. at 286-87.

*Standards for Issue Preclusion (Collateral Estoppel).*

6. "Collateral Estoppel or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'"[15]

7. In other words, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."[16]

8. "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."[17]

9. In the bankruptcy dischargeability context, "parties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability" and thereby satisfy the elements thereof.[18]

10. In other words, when an issue that forms the basis for a creditor's theory of nondischargeability has been litigated in a prior proceeding, neither the creditor nor the debtor may relitigate those grounds.[19]

11. While the doctrine of issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable.[20]

---

[15] *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (internal quotations omitted).

[16] *Montana v. U. S.*, 440 U.S. 147, 153 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)).

[17] *Id.* at 153-54.

[18] *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (quotation marks omitted).

[19] *RecoverEdge, L.P. v. Pentecost*, 44 F.3d 1284, 1294 (5th Cir. 1995).

[20] *Grogan,* 498 U.S. at 284 n. 11.

12. The inquiry into the preclusive effect of a state court judgment is guided by the Full Faith and Credit Act, which states that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."[21]

13. "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and *commands* a federal court to accept the rules chosen by the State from which the judgment is taken."[22]

14. Effectively, the "Full Faith and Credit Act expands the Full Faith and Credit Clause and requires federal courts to give full faith and credit to state court proceedings."[23]

15. Thus, federal courts are not free to ignore the principles of issue preclusion utilized by the forum state in which the prior judgment was entered.[24]

16. Because the judgment against the Defendant was entered in a Texas state court, this Court is required to apply the Texas law of issue preclusion.[25]

17. Collateral estoppel under Texas law prevents the relitigation of identical issues of law or fact that were actually litigated and were essential to the final judgment in a prior suit.[26]

---

[21] 28 U.S.C.A. § 1738 (West 2006).  In the vernacular of the Supreme Court, § 1738 "implements" the Full Faith and Credit Clause of the United States Constitution – U.S. Const., Art. IV, § 1. *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 80, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

[22] *Shimon v. Sewerage & Water Bd. Of New Orleans*, 565 F.3d 195, 199 (5th Cir. 2009) (emphasis added)[(citing *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986)) and *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)).

[23] *Davis v. Chase Home Finance, LLC*, 597 F. App'x 249, 252 (5th Cir. 2015).

[24] *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997).

[25] *Ingalls v. Erlewine (In re Erlewine)*, 349 F.3d 205, 210 (5th Cir. 2003); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996).

[26] *Tex. Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001).

18. "The doctrine applies when the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit."[27]

19. Specifically, a party is collaterally estopped from raising an issue under Texas law when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case.[28]

20. "Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties."[29]

21. Issue preclusion principles apply even if the final judgment is erroneous.[30]

22. The purpose of the reviewing court is to determine the specific facts brought that were already established through full and fair litigation. In this circuit, issue preclusion will prevent a bankruptcy court from determining dischargeability issues for itself only if "the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question . . . and the facts supporting the court's findings are discernible from that court's record."[31]

23. Based upon the Court's previous determination that all prerequisites to the application of Texas issue preclusion principles have been established, as set forth in its Memorandum of Decision regarding the Plaintiffs' Motion for Summary Judgment, the factual determinations issued in the State Court Litigation are binding upon the parties and upon the Court in this case.

---

[27] *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1991) (citing *Tarter v. Metropolitan Sav. & Loan Ass'n*, 744 S.W. 926, 927 (Tex. 1988)).

[28] *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984); *Terry v. Chicago Bridge & Iron Co.*, 283 F. Supp. 3d 601, ___, 2017 WL 6947925, at *3 (S.D. Tex. 2017).

[29] *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985).

[30] *Pentecost*, 44 F.3d at 1296 ["It is well settled, however, that even arguably erroneous judgments have preclusive effect if the requirements for collateral estoppel are satisfied"] (citing *I.R.S. v. Teal (In re Teal)*, 16 F.3d 619, 622 n. 6 (5th Cir.1994)).

[31] *Fielder v. King (Matter of King)*, 103 F.3d 17, 19 (5th Cir. 1997)(citing *Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 278 (5th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 1081 (1995)).

*Texas Law: Trespass*

24. A person commits a trespass under Texas law when that person enters upon the property of another without the consent of the true owners of the property or interferes with a person's right of possession or use of such property.[32]

25. A person commits a trespass under Texas law if that person intended to take the act that results in an unauthorized entry upon another's property.[33]

26. "The only relevant intent [regarding trespass] is that of the actor to enter the property. The actor's subjective intent or awareness of the property's ownership is irrelevant."[34]

27. Every unauthorized entry upon property is a trespass under Texas law even if no damage is done or any injury is slight.[35]

28. Liability for trespass under Texas law is not dependent upon personal participation in the trespass.[36]

29. One who aids, assists, advises or gives encouragement to the actual trespasser, or concert and cooperation in the commission of a trespass is equally liable with the actual trespasser.[37]

30. The Defendants had a right to use the portion of land impressed with the Plaintiffs' easement for their cattle so long as such use was not conducted by the Defendants

---

[32] *Jury Charge*, Plaintiffs' Ex. 1 at 26. *Envntl. Processing Sys., L.C. v. FPL Farming, Ltd.*, 457 S.W.3d 414, 419-22 (Tex. 2015) and cases cited therein.

[33] *Jury Charge*, Plaintiffs' Ex. 1 at 26.

[34] *Salazar v. Sanders*, 440 S.W.3d 863, 876 (Tex. App.—El Paso 2013, pet. denied) (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827 (Tex.1997)).

[35] *Jury Charge*, Plaintiffs' Ex. 1 at 26. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 920 (Tex. 2013).

[36] *Parker v. Kangerga*, 482 S.W.2d 43, 47 (Tex.Civ.App.–Tyler 1972, writ ref'd n.r.e.).

[37] *Jury Charge*, Plaintiffs' Ex. 1 at 26. *Victory Energy Corp. v. Oz Gas Corp.*, 461 S.W.3d 159, 177 (Tex. App.—El Paso 2014, pet. denied); *Schievink v. Wendylou Ranch, Inc.*, 227 S.W.3d 862, 865 (Tex. App.—Eastland 2007, pet. denied).

with an intent to interfere with the use of the easement by the Plaintiffs.[38]

*Nondischargeability Under § 523(a)(6): Debt Arising from Willful and Malicious Injury*

31. The Plaintiffs contend that the debt owed to them by the Defendant should be excepted from discharge as a debt arising from a willful and malicious injury inflicted upon each of them by the Debtor-Defendant.

32. Section 523(a)(6) of the Bankruptcy Code provides that:

    (a) A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . .

    (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

33. In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court significantly narrowed the scope of debts that could be deemed nondischargeable under § 523(a)(6).

34. The *Geiger* decision clearly requires that an actor inflict a deliberate or intentional injury, not merely that an actor take a deliberate or intentional act that leads to injury.

35. As subsequently interpreted by the Fifth Circuit, a determination of nondischargeability under § 523(a)(6) for a "willful and malicious injury" now requires proof that such injury arose from a deliberate and intentional act by a debtor that was inflicted under circumstances evidencing either: (1) an objective substantial certainty of harm; or (2) a subjective motive to cause harm. *Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998), *cert. denied, Miller v. J.D. Abrams, Inc.*, 526 U.S. 1016 (1999); *see also Caton v. Trudeau (In re Caton)*, 157 F.3d 1026, 1029 (5th Cir. 1998).

36. The "objective substantial certainty" prong "is a recognition of the evidentiary reality that defendants rarely admit malicious intent. A court is thus expected to analyze whether the defendant's actions, which from a reasonable person's

---

[38] *Jury Charge*, Plaintiffs' Ex. 1 at 26. *Robles v. Mann*, 2016 WL 1613316, at *5 (Tex. App.—Corpus Christi Apr. 21, 2016, no pet.) (citing *Bickler v. Bickler*, 403 S.W.2d 354, 359 (Tex.1966)).

standpoint were substantially certain to cause harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009), citing *Berry v. Vollbracht (In re Vollbracht)*, 276 F. App'x. 360 (5th Cir. 2007).

37. The existence of the Defendant's liability under the State Court Judgment, and any unstated factual underpinning that each Plaintiff's damages were proximately caused by the Defendant's trespass falls far short of establishing that such activities "were substantially certain to result in injury" for the purposes of the § 523(a)(6) analysis. *See Miller*, 156 F.3d at 604.

38. "Proximate cause" contemplates a far less demanding standard than "substantial certainty." *Id.*

39. In order to prove the existence of a willful and malicious injury based upon an omission, "a creditor must meet a very high burden —*i.e*., he must show that the failure to act was intentional, as opposed to merely negligent or reckless . . . [and] that the failure to act was with either an objective certainty of harm or a subjective motive to cause harm." *Hughes v. Wells (In re Wells)*, 2006 WL 6508180, at *26 (Bankr. N.D. Tex. Mar. 9, 2006).

40. The Plaintiffs have failed to demonstrate by a preponderance of the evidence the infliction of a deliberate or intentional injury upon either of them by the Defendant, Georgia P. Long.

41. The Plaintiffs have failed to demonstrate by a preponderance of the evidence that the actions of the Defendant, Georgia P. Long, created an objective substantial certainty of harm to either of them.

42. The Plaintiffs have failed to demonstrate by a preponderance of the evidence that any omission by the Defendant, Georgia P. Long, inflicted a deliberate or intentional injury upon either of them or created an objective substantial certainty of harm to either of them.

43. The Plaintiffs have failed to sustain their burden of proof that any portion of the debt owed to either of them by the Defendant as evidenced by the State Court Judgment arose from the infliction of a "willful and malicious injury" as contemplated by § 523(a)(6).

## CONCLUSION

44. Because the Court concludes that the Plaintiffs, Brandi Bruce and Todd Short, have each failed to prove by a preponderance of the evidence that the asserted debt owed by the Defendant, Georgia P. Long, pursuant to the State Court Judgment arose from the infliction of a willful and malicious injury, judgment must be rendered for the Defendant under § 523(a)(6).

45. Thus, all relief requested in the Plaintiffs' Complaint in the above-referenced adversary proceeding as against Defendant, Georgia P. Long, shall be denied.

46. To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

47. An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 04/09/2019

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE